L.B. HOLDING, INC. *vs.* UNIVERSITY BANK AND TRUST COMPANY. December 12, 1989. *Practice, Civil*, Judgment. *Landlord and Tenant*, Subletting, Parking. *Zoning*, Parking requirements.

The parties entered into a written sublease for premises in Waltham in which the defendant intended to conduct banking business. The defendant decided not to occupy the premises, precipitating a suit by the plaintiff for unpaid rent and other damages. The defendant counterclaimed alleging that the plaintiff had violated the sublease thereby relieving the defendant from any liability thereunder. After conducting discovery, both parties moved for summary judgment pursuant to Mass. R. Civ. P. 56, 365 Mass. 824 (1974). A judge in the Superior Court allowed the plaintiff's motion and denied the defendant's motion. The parties then executed an "agreement for judgment" on damages which was docketed, and which they, and we, treat as the judgment in the case, see *Lewis* v. *Emerson*, 391 Mass. 517, 520 (1984). The defendant has appealed. We transferred the case to this court on our own motion. We affirm.

The defendant contends that a provision of the prime lease between the plaintiff and its lessor, which guaranteed twenty-nine parking spaces to the plaintiff, was incorporated into the sublease and guaranteed the defendant the same number of parking spaces. The defendant maintains that the guaranteed parking was not provided. The defendant also argues that the parking that was provided for by the sublease violated Waltham zoning

ordinances and thus made occupation of the premises illegal. For either reason, the defendant concluded it was excused from taking occupancy under the sublease and from the payment of rent.

1. In the prime lease the plaintiff's lessor provided that the plaintiff have "exclusive use of the 4 parking spaces" in front of the building, and that the plaintiff be "entitled to the use of 25 parking spaces" in the rear. The sublease between the plaintiff and the defendant provides for parking by means of the following provision: "PARKING. All staff and other [of defendant's] personnel shall park in the rear of the building. Parking shall be on a first come, first serviced basis. In addition [the defendant] shall have the use of four reserved parking spaces at the front of the building."

The record satisfies us that the sublease was drafted and intended by the plaintiff and defendant as independent of the prime lease. Where provisions of the prime lease were meant to be included in the sublease they were referred to by specific reference to the appropriate provision number of the prime lease. There is no such reference with respect to the parking provision of the prime lease. On the contrary, it clearly appears from the parking provision in the sublease (set forth above) that the plaintiff and the defendant fashioned their own particular agreement for parking which differed substantially from the agreement contained in the prime lease. The agreement in the sublease gave the defendant the right to use the parking spaces in the rear that were available to the plaintiff on a "first come, first serviced" basis, but it did not guarantee that a specific number of parking spaces would always be available in the rear. Both the plaintiff and the defendant are experienced in business and were represented by counsel in connection with the negotiation and execution of the sublease. This is not a case in which any promise for greater parking rights than those stated in the sublease can or should be implied. See *Mathewson Corp.* v. *Allied Marine Indus.*, 827 F.2d 850, 856 (1st Cir. 1987). The judge correctly ruled that the parking provision in the sublease did not grant the defendant the absolute right to twenty-nine parking spaces.

2. The defendant's claim that the parking situation violates the Waltham zoning ordinances and makes occupation of the premises unlawful is general in nature. Two affidavits from the inspector of buildings for the city of Waltham set out the provisions of the zoning ordinances that may apply to parking in the zone and state the inspector's past interpretation of those provisions. The affidavits do not indicate that the parking contemplated by the sublease is illegal, or that the defendant would not be allowed to engage in the banking business at the premises because of the parking arrangements in the sublease. There is also nothing of substance in the record to show that any parking requirement in the zoning ordinances that might apply to the premises (which has not been complied with) might not be excused or varied if it restricted the defendant's intended use of the premises for banking purposes. In the circumstances, the defendant's zoning violation claim is not one which would relieve the defendant

from its obligations under the sublease. See *Stockburger* v. *Dolan*, 14 Cal. 2d 313, 316-317 (1939); *Warshawsky* v. *American Automotive Prods. Co.*, 12 Ill. App. 2d 178, 183 (1956); *McNally* v. *Moser*, 210 Md. 127, 137-138 (1956). There is nothing in *Howland* v. *Board of Appeals of Plymouth*, 13 Mass. App. Ct. 520 (1982), to the contrary. As a result of our conclusion, we need not consider whether an implied covenant of quiet enjoyment is violated if a lessee is unable to use the leased premises because of a violation of the local zoning ordinances.

*Judgment affirmed.*

*Marshall D. Stein* for the defendant.
*Peter S. Brooks* for the plaintiff.